JOHN D. BUSH, Trustee,

*v.*

CLARK DOWNEY *et al.*

*Opinion filed February 21, 1902.*

1. CREDITOR'S BILL—*when charge that assignment of legacy was without consideration is not sustained.* A charge in a creditor's bill that the debtor's assignment of a legacy was without consideration is not sustained where the evidence shows the debtor was largely indebted to his children, the beneficiaries of the assignment.

2. EVIDENCE—*rights of assignees not affected by assignor's subsequent acts and declarations.* Rights in good faith acquired by the beneficiaries under an assignment of a legacy cannot be affected by the subsequent acts and declarations of the assignor inconsistent with good faith on his part in making the assignment.

*Bush* v. *Downey*, 96 Ill. App. 503, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Marshall county; the Hon. T. M. SHAW, Judge, presiding.

W. T. WHITING, for appellant.

BARNES & MAGOON, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The appellant filed a creditor's bill in the circuit court of Marshall county to set aside as fraudulent an assignment of a legacy, and to have such legacy, or so much of it as had not been paid, applied to the satisfaction of his judgment. The master reported the evidence to the court, and his conclusions, to the effect that the assignment was not fraudulent, and recommended the dismissal of the bill. The chancellor heard the cause on exceptions and sustained the master's report and dismissed the bill. The Appellate Court affirmed the decree, and the complainant then took this appeal.

It appears from the record that A. S. Broadus, one of the defendants, gave a judgment note to the complainant, Bush, for the rent of certain premises in Peoria which he and his then wife occupied as a kind of hotel, and soon thereafter, on November 11, 1899, Bush obtained judgment thereon for the amount of $1219.95 and costs. Execution having been returned *nulla bona*, Bush filed this bill. Before the giving of the note for rent, and before such rent had accrued, and in December, 1897, one Bond died testate in said Marshall county, leaving to A. S. Broadus a legacy of $3000. About a month after the death of Bond, C. C. Broadus, a son of A. S. Broadus by a former wife, went from Marshall county to Peoria and procured from his father a written assignment to himself of such legacy, filed a copy of it in the probate court in the matter of the Bond estate and delivered another copy to the executors of Bond. The bill alleged

that this assignment was without consideration, was made to hinder and delay creditors, and was fraudulent and void as to the creditors of A. S. Broadus, and asked to have the same set aside, and to require the executors to pay so much of the legacy as remained unpaid to satisfy complainant's judgment.

A. S. Broadus had been married twice and had two sets of children. C. C. Broadus, William F. Broadus and Gail H. McCormick (*nee* Broadus) are the children of his first wife. She had died many years before the happening of the events above narrated, and had left about $5000 invested in notes secured by mortgage, to her said three children. Her husband, A. S. Broadus, was appointed their guardian, obtained and sold said notes and converted the proceeds to his own use, and never thereafter accounted for or paid to his wards any part of such proceeds, and he and his surety having become insolvent, the wards were unable to enforce payment. The evidence showed that very soon after the death of Bond the said C. C., William F. and Gail H. met together at Lacon, and agreed that said C. C. Broadus should endeavor to procure from their father an assignment of said legacy in payment, *pro tanto*, of their said demand against him. It was in pursuance of this understanding that C. C. Broadus obtained the assignment sought to be set aside. It was made to C. C. Broadus, but he and A. S. Broadus and others testified that it was made in good faith, not only for the benefit of C. C. Broadus, but for the benefit of his brother, William F., and his sister, Gail H. Other witnesses testified to statements made by both assignor and assignee, to the effect that the assignment was made to protect A. S. Broadus and to prevent the legacy from being taken to pay the rent for the Peoria house.

The evidence tended to prove that Mrs. A. S. Broadus rented the Peoria house in her own name, in November, 1897,—less than a month before Bond died and left the legacy to her husband,—and that when the assignment

was made, a month later still, there was little, if any, rent due to Bush, and it was not until November 15, 1898, —a year later,—that A. S. Broadus took the lease from Bush under which the rent accrued for which the judgment against him was rendered. The indebtedness for which the judgment was rendered did not exist when the assignment was made, and the evidence was not sufficient to prove that the parties contemplated, at the time of the assignment, that such indebtedness would subsequently accrue and remain unpaid and that the assignment would prevent its collection. A. S. Broadus was indebted to his children, on account of the guardianship, to an amount exceeding the legacy, hence the charge in the bill that the assignment was without consideration was not sustained by the evidence, and we are of the opinion that it was correctly held below that the further charge that the assignment was made with intent to hinder and delay the creditors of A. S. Broadus was not established, notwithstanding it was shown that the beneficiaries of the assignment allowed their father to receive the larger part of the legacy, and notwithstanding the fact that he, A. S. Broadus, when he signed the lease in November, 1898,—ten months after he had made and delivered the assignment,—gave his landlord, Bush, an order on the executors of Bond's estate for his interest therein, to secure the rent. Although the acts and declaration of A. S. Broadus after he made the assignment may not have been consistent with good faith on his part in making the assignment, still he could not, by anything he could do or say, take from the beneficiaries under the assignment, rights which they had previously and in good faith acquired.

The testimony was conflicting and irreconcilable, but after considering all of it we cannot say that a different result should have been reached. On the contrary, we think the proper decree was rendered, and it will be affirmed.
                                        *Decree affirmed.*